**CV 14 - 4882**

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

JOHNSON

AZRACK, M.J.

| | |
|---|---|
| JAIME PESANTEZ, | Civil Action No.: _____ |
| Plaintiff, | |
| -Against- | **COMPLAINT** |
| The Bank of New York Mellon, | |
| Defendant. | |

'14 AUG 15  PM 2: 47

FILED CLERK

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

JAIME PESANTEZ, the Plaintiff, by and through counsel CARTER & ASSOCIATE ATTORNEYS, PLLC, alleges the following upon information and belief, except as to those allegations concerning Mr. Pesantez, which are alleged upon personal knowledge.  Mr. Pesantez's information and belief are based upon, among other things, his investigation, and Mr. Pesantez's pursuit of his claims in question, as well as Mr. Pesantez's personal experience of the claims in question against Defendant Bank of New York Mellon ("Mellon").  Plaintiff believes that further substantial evidentiary support will provide further support of his claims.

## SUMMARY OF CLAIMS

1.      Mr. Pesantez brings a 42 U.S.C. § 1981 claim against Mellon, where Mellon, in falsely telling and misrepresenting to Mr. Pesantez that he had no foreclosure alternatives, but to agree to a short-sale of the premises located at 106-19 95th Street, Ozone Park, New York ("the Premises"), impaired Mr. Pesantez's right to modification of the mortgage resulting from Mr. Pesantez and Mellon's contractual relationship pursuant to the Federal Home Affordable Modification Program Tier 2 ("HAMP 2) 12 U.S.C. §§ 5219, 5219a, where Mr. Pesantez is a member of some of the insular protected classes as a Hispanic American (i.e. race), who immigrated to the United States (i.e. nationality), WHERE Mellon intended to discriminate against Mr. Pesantez, denying Mr. Pesantez a modification where such was duly mandated, while not doing so to similarly situated other persons (e.g. White or African American).

2.      Mr. Pesantez brings a breach of contract claim against Mellon for breach of the implied covenant of good faith and fair dealing as to the mortgage contract, where Mellon, possessing a fiduciary obligation to Mr. Pesantez, violated its obligations under 12 U.S.C. §§ 5219, 5219a, where Mellon falsely informed and misrepresented to Mr. Pesantez that his sole foreclosure alternative was to agree to a short-sale of the premises, where pursuant to Section 3408 of the New York Civil Practice Law and Rules, and HAMP 2, Mellon was required to convert Mr. Pesantez's adjustable rate mortgage to a fixed rate mortgage, where modification of Mr. Pesantez's monthly mortgage payment would have resulted in at-least a 10% reduction.

3.      Mr. Pesantez brings a claim of fraud and intentional misrepresentation against Mellon where Mellon made intentional material misrepresentations of existing facts, where during the parties' Queens County Supreme Court foreclosure action under Index Nos. 703262-2012 and 702217-2013, and during the parties' mandatory settlement conference(s) pursuant to

Section 3408, Mellon told Mr. Pesantez that his sole option was to agree to a short-sale of the premises, WHERE said representation was false as Section 3408 and HAMP 2, required Mellon to convert Mr. Pesantez's adjustable rate mortgage to a fixed rate mortgage, WHERE modification of Mr. Pesantez's monthly mortgage payment would have resulted in at-least a 10% reduction, WHERE such false representation was material to Mr. Pesantez's decision to agree to the short-sale, WHERE Mellon made such representations knowing such to be false or did not know such representations to be true, WHERE Mellon made such false representations with the intent to induce Mr. Pesantez's reliance thereon, WHERE Mr. Pesantez did not know such representations to be false, WHERE Mr. Pesantez justifiably relied upon those material false misrepresentation, and WHERE Mr. Pesantez sustained damages as a result of such reliance.

4.      Mr. Pesantez's underlying mortgage falls squarely within the confines of the class of mortgages the State of New York and the United States deemed predatory, and required modification.

5.      The underlying mortgage instrument, although not itself per se illegal, is nonetheless so sophisticated and inherently risk that historically, it has been preserved principally for sophisticated borrowers, not your "average joes."

6.      The Plaintiff will be estopped from saying that it could not modify the terms of Mr. Pesantez's mortgage, such that his mortgage payments could not be modified at least 10%.

7.      On or about December 21, 2006, the Defendant, Jaime Pesantez, and People's Choice Home Loan, Inc. (hereinafter also referred to as "the Original Lender"), and Mortgage Electronic Registration Systems, Inc. (hereinafter referred to as "MERS" or "the Servicer"), executed the Mortgage in question for $405,000.00.

8.     The Mortgage contained an adjustable rate note, providing that the interest rate on Mr. Pesantez's mortgage payments would be no less 7.650% and no greater than 13.650%.

9.     Pursuant to the parties' adjustable rate, the Original Lender provided Mr. Pesantez with the "Balloon Disclosure."

10.     The Balloon Disclosure provided that in year 30, Mr. Pesantez would be required to pay in full, whatever balance then remained due.

11.     According to the Original Lender's Truth-In-Lending Disclosure Statement, in the event, Mr. Pesantez paid every single payment, as required by the parties' mortgage agreement, not having ever defaulted, in year 30, Mr. Pesantez would be required to pay the Lender a balloon payment of $372,154.18 in order own the property free-and-clear of the encumbrance.

12.     The Mortgage was, quite simply, as predatory as predatory can get.  It is effectually an interest only mortgage.

13.     After several years of making payment, Mr. Pesantez realized that the balance never changed.  It took Mr. Pesantez several years to realize this because he was not the sophisticated borrower for whom these inherently risk products were created.

14.     Despite being an adjustable rate, balloon loan, the adjustable rate mortgage may be converted into a fixed rate mortgage.

15.     Mellon received three (3) billion dollars in Troubled Asset Relief Program ("TARP") funds from the U.S. Treasury.

16.     The Original Lender, a precursor, to the mortgage crises, in an ordered dated September 26, 2007, was ordered by the State of California to discontinue its mortgage practices, due to its financial distress and subprime lending practices, under File No. 413-0346.

17. On March 20, 2007, the Original Lender filed for Chapter 11 Bankruptcy under Docket No. 12-15811, in the Central District of California, Santa Ana Division.

18. On or about July 29, 2008, Judge Kwan of the U.S. Bankruptcy Court confirmed the Original Lender's liquidation plan, moving it closer to emergence from bankruptcy.

19. Thus, on information and belief, Mellon received the assignment as a result of the Original Lender's liquidation.

20. Mr. Pesantez's mortgage is a high-cost home loan, a subprime home loan and a nontraditional home loan within the meaning of Section 3408 of the New York Civil Practice Law and Rules.

21. Pursuant to HAMP, Mellon was required to modify the terms of the Mortgage that are predatory.

22. Section 3408 like the HAMP program, mandates that Mellon's foreclosure action being subjected to mandatory settlement conferences.

23. The underlying action in Queens County Supreme Court Index No. 703262-2012 commenced in earnest about January 2013. It appears that no settlement conferences were actually had in the underlying action.

24. Judgment appears to have entered by default, as Mr. Pesantez didn't appear until after judgment had issued, where he appeared *pro se*.

25. However, by the time the Mr. Pesantez appeared in the foreclosure action under Index No. 702217-2013, it appeared that the foreclosure steam roller that New York State Legislators and the U.S. Congress acted to retrain, was moving in its old-throw back fashion, of the proverbial "full speed ahead." Therefore, there were no mandatory settlement conferences in the underlying action under Index No. 703262-2012.

26.    Oddly enough, the mandatory settlement conference occurred under Index No. 702217-2013, without the judgment having ever been vacated.  There, the *pro se* Mr. Pesantez was operating under the duress of judgment having been entered against him.

27.    The juxtaposition that the parties would negotiate foreclosure alternative pursuant to 3408 where Mellon had received a judgment foreclosure against Mr. Pesantez was compounded by Mellon's fraudulent conduct where Mellon who had previously and routinely refused Mr. Pesantez's requests for modification, without reasons, falsely telling Mr. Pesantez that his sole foreclosure alternative was to agree to a short-sale.

28.    Mellon, engaged in fraud, telling and misrepresenting to Mr. Pesantez that his only foreclosure alternative was to agree to a short-sale.  That was false, because on its face, Mellon would be required to modify Mr. Pesantez's predatory loan where such modification would result in Mr. Pesantez's mortgage payment being decreased at least 10%.

## JURISDICTION AND VENUE

29. The claims asserted herein arise under federal law and state law.

30. The he acts and practices complained of herein have occurred in this Judicial District.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief and judgment, as follows:

(a)    Awarding compensatory and punitive damages in favor of Plaintiff for all damages sustained as a result of Defendants' wrongdoing;

(b)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder;

(c)    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: New York, New York
      August 13, 2014

CARTER & ASSOCIATE ATTORNEYS, PLLC
ATTORNEYS FOR THE PLAINTIFF

BY: _____
                     Damond J. Carter
                224 West 35th Street, Suite 512
                New York, New York 10001
        (646) 405-5225, Ext. 5201 Telephone
            (888) 711-4420 Facsimile